**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN MARK COVERT<br>1986 Shady Oak Circle<br>Allison Park, PA 15101<br><br>  Plaintiff<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA<br>10 Hudson Yards<br>New York, NY 10001<br><br>and<br><br>THE GATEWAY ENGINEERS, INC.<br>EMPLOYEE BENEFIT PLAN<br>100 McMorris Road, Suite 1303<br>Pittsburgh, PA 15205<br><br>and<br><br>GENEX SERVICES, LLC<br>440 East Swedesford Road, Suite 1000<br>Wayne, PA 19087<br><br>  Defendants | No. |

## **COMPLAINT**

Plaintiff John Mark Covert ("Covert"), through his undersigned counsel, for his Complaint against The Guardian Life Insurance Company of America ("Guardian"), The Gateway Engineers, Inc. Employee Benefit Plan ("the Plan"), and Genex Services, LLC ("Genex") (collectively, Guardian, Genex and/or the Plan are referred to as "Defendants") and states as follows.

## INTRODUCTION

1.      Plaintiff brings this action pursuant to Section 502(a) of ERISA, 29 U.S.C. § 1132(a).  Plaintiff seeks long-term disability ("LTD") benefits due under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) and attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## THE PARTIES

2.      Mr. Covert is a resident of Allison Park, Pennsylvania, an employee of Gateway Engineers, Inc. ("Gateway"), and a participant in the Plan.

3.      The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), that provides, among other benefits, short-term and long-term disability benefits to eligible Plan participants.

4.      Gateway is the Plan's sponsor and Administrator as those terms are defined in Section 3 of ERISA, 29 U.S.C. § 1002.

5.      At all times relevant to the Complaint, the Plan's LTD benefits were funded through a contract of insurance (group policy number 00358969) ("the Group Contract") Gateway purchased from Guardian, which is headquartered in New York, New York, and which maintains an office 6255 Sterners Way, Bethlehem, Pennsylvania.  A copy of the Group Contract is appended hereto as Exhibit A.

6.      The Group Contract was delivered and accepted in the Commonwealth of Pennsylvania and is governed by its laws to the extent that ERISA does not preempt such laws.

7.      Guardian contends that it is responsible for adjudicating claims for the Plan's LTD benefits.

8. As the entity reputedly responsible for adjudicating claims for Plan benefits and paying those benefits, Guardian operates under an inherent conflict of interest as a matter of law.

9. Additionally, Guardian is a fiduciary as a matter of law because it exercises control over Plan assets. 29 U.S.C. § 1002(21).

10. Genex is a limited liability company with its principal place of business in Wayne, Pennsylvania. Genex provides services to Guardian.

## JURISDICTION AND VENUE

11. The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

12. At all relevant times, the Plan was and is administered in the Eastern District of Pennsylvania as, among other things, Plaintiff's claims were processed by Guardian personnel in Bethlehem, Pennsylvania. Venue is thus proper in the United States District Court for the Eastern District of Pennsylvania. 29 U.S.C. § 1132(e)(2).

13. The Court has personal jurisdiction over Defendants as the Plan is administered in this District and Division and Defendants regularly transact business in this District and Division. This Court also has personal jurisdiction over Defendants because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

14. Section 503 of ERISA, 29 U.S.C. § 1133, provides a mechanism for administrative or internal appeals of benefit claim denials. Those avenues of appeal have been exhausted.

## THE TERMS OF THE PLAN

15. The Plan provides short-term disability and LTD benefits.

16. Guardian is responsible for adjudicating claims for short-term disability and LTD benefits.

17. The Plan's LTD benefits are insured through the Group Contract.

18. The Group Contract has a 90-day elimination period before LTD benefits are payable to disabled participants.

19. The Plan's short-term disability benefits are payable to disabled Plan participants concurrently with the Plan's LTD elimination period.

20. Disabled under the Plan's short-term disability program means, for a participant, like Mr. Covert,

> a current *sickness* or *injury* causes physical or mental impairment to such a degree that you are: (a) not able to perform, on a full-time basis, the major duties of your *own job* and (b) not able to earn more than this plan's maximum allowed disability earnings.

Exhibit A at p. 19.

21. Under the short-term disability program "own job" means "Your job for the *employer*. We use the job description provided by the *plan sponsor* to determine the duties and requirements of your *own job*." *Id.* at p. 23.

22. Under the Group Contract, Disability or Disabled is defined for LTD purposes as follows:

> These terms mean that a current *sickness* or *injury* causes physical or mental impairment to such a degree that you are: (a) not able to perform, on a full-time basis, the major duties of your *own occupation*; and (b) not able to earn more than this *plan's* maximum allowed *disability earnings*.

*Id.* at p. 87.

23. "Own occupation" is defined for purposes of LTD benefits as

> the occupation: (a) you are routinely performing immediately prior to disability; (b) which is your primary source of income prior to disability; and

(c) for which you are insured under this plan. Occupation includes any employment, trade or profession that are related in terms of similar: (i) tasks; (ii) functions; (ii) skills; (iv) abilities; (v) knowledge; (vi) training; and (vii) experience; required by employers from those engaged in a particular occupation in the general labor market in the national economy. Occupation is not specific to a certain employer or a certain location.

*Id*. at 91.

24. Guardian contends that it has discretionary authority to interpret and construe the terms of the Plan and that it is the sole entity responsible for adjudicating claims for the Plan's LTD benefits.

**FACTS COMMON TO ALL COUNTS**

25. Mr. Covert is presently 60 years old.

26. In 2020, at age 57, Gateway employed Mr. Covert as a Surveying Crew Chief.

27. On or about March 30, 2020, Mr. Covert left work due to his systemic inflammatory response syndrome, which put him at increased risk of serious illness due to the COVID-19 virus, as well as various physical limitations, including numerous back problems.

28. The definition of disability under the Plan's short-term disability program is functionally identical to the definition of disability under the group policy for LTD benefits.

29. According to the position description Gateway—the Plan's administrator and named fiduciary—created for the Surveying Crew Chief position, the occupation requires, among other things:

 a. "While performing the duties of this job, the employee is regularly required to use hands and arms to operate equipment, stand, walk, climb, balance, stoop, kneel, crouch, crawl, talk or hear;"

 b. "regularly required to lift, carry and/or move up to 40 pounds of equipment during an entire workday;"

5

  c. "regularly required to walk/traverse over various terrains including steep hills/slopes, thick forests and uneven/slippery surfaces. Walking distances can vary greatly but can reach as far as several miles in one day;" and

  d. working from heights on occasion.

30. In addition, in response to a short-term disability questionnaire Guardian sent to Gateway, the employer noted his occupation requires the ability to frequently lift 50-100 pounds of weight, and to stand and walk frequently.

31. In 2016, when Mr. Covert submitted a separate short-term disability plan to Guardian, it classified his occupation as requiring a very heavy level of exertion.

32. In April 2020, when considering Mr. Covert's short-term disability claim, Guardian again determined that Mr. Covert's own occupation required a very heavy level of exertion.

33. Guardian, which also administers the Plan's short-term disability benefits under the Plan, approved his claim for short-term disability benefits with a benefit commencement date of April 26, 2020.

34. Short-term disability benefits were payable under the Plan for a maximum duration concurrent with the LTD program's 90-day elimination period, terminating as of July 25, 2020.

35. Guardian determined that Mr. Covert was disabled from his own occupation for the maximum duration short-term disability benefits were payable.

36. When it came time to process Mr. Covert's LTD claim, Guardian incorrectly classified his occupation as requiring a light level of exertion notwithstanding the evidence and its prior determinations to the contrary.

37. In a letter dated September 16, 2020, Guardian initially denied Mr. Covert's claim for LTD benefits on the sole basis that there was "no objective evidence to support your disability," and Guardian advised him of his right to appeal that adverse determination.

38. On November 27, 2020, Mr. Covert underwent a functional capacity evaluation ("FCE") to provide an objective assessment of his ability to meet the exertional requirements of his own occupation.

39. The FCE showed that Mr. Covert could not lift more than 35 pounds of weight occasionally and 17.5 pounds of weight frequently.

40. According to the Dictionary of Occupational Titles, Medium exertion work requires "[e]xerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects."

41. According to the FCE's results, Mr. Covert cannot perform medium exertion work because he cannot lift up to 50 pounds of weight occasionally and up to 25 pounds of weight frequently.

42. According to the FCE results, Mr. Covert cannot perform his own occupation as his job description provides that he must be able to lift up to 40 pounds of weight to perform his occupation.

43. The FCE was supported by validity criteria and showed consistent effort by Mr. Covert.

44. Mr. Covert (without counsel) timely appealed Guardian's denial of his claim for LTD benefits in a letter dated January 27, 2021.

45. Guardian contended that it received Mr. Covert's letter on February 4, 2021.

46. Pursuant to 29 U.S.C. § 1133 as implemented in 29 C.F.R. § 2560.503-1(i), Guardian had 45 days in which to adjudicate Mr. Covert's appeal or request an automatic 45-day extension of time to consider the appeal.

47. 45 days from February 4, 2021 was Sunday, March 21, 2021.

48. In a letter dated March 16, 2021, Guardian advised Mr. Covert that it required a 45-day extension of time beginning on March 22, 2021 and ending on May 5, 2021, which is 90 days after February 4, 2021.

49. On May 3, 2021, because it was still searching for reasons to deny Mr. Covert's appeal, Guardian requested a 30-day extension of time, to June 4, 2021, from Mr. Covert in which to adjudicate his appeal.

50. Mr. Covert agreed to Guardian's request, but Mr. Covert was not informed that he was not required to agree to Guardian's request or the potential implications agreeing to Guardian's request could have on his claim.

51. In requesting a 30-day extension of time from Mr. Covert without fully explaining the consequences of such an extension to him, Guardian engaged in self-dealing contrary to its obligations to Mr. Covert under Section 404 of ERISA, 29 U.S.C. § 1104.

52. At Guardian's request, Kevin Trangle, MD completed a records-only review of Mr. Covert's claim. Dr. Trangle did not speak with or personally evaluate Mr. Covert or speak with his treating clinicians.

53. Dr. Trangle is a known insurance industry record-reviewing physician and is presently the principal of Kevin Trangle & Associates, which advertises its services to insurers in disability cases.

54. Dr. Trangle obtains a significant source of his annual income reviewing disability claims himself and through his firm on behalf of disability insurers, like Guardian, and is not independent or impartial.

55. After preparing an initial report for Guardian, Dr. Trangle was asked to "clarify" his report and opined that Mr. Covert was not disabled and disregarded the opinions of Mr. Covert's treating healthcare providers and FCE results.

56. Remarkably, Dr. Trangle also executed a declaration "under the pains and penalties of perjury," that he had no "Conflict of Interest with this review" because he had "no past or present relationship or affiliation with the beneficiary of this Independent Review or a significant past or present relationship with the attending provider and/or the treatment facility under review (if applicable)."

57. Dr. Tangle did not certify "under the pains and penalties of perjury" that he had no past or present relationship with Guardian or ECN and was not conflicted in regard to those relationships.

58. Guardian did not adjudicate Mr. Covert's appeal. Instead, it outsourced its decision-making to Genex, one of Guardian's vendors.

59. Genex forwarded its assessment and decision on Mr. Covert's appeal to Guardian as an attachment to an email dated May 25, 2021.

60. Genex's report was contained in a file named: "CovertAppealReview521FINAL.rtf," which concluded that Mr. Covert was not disabled from his own occupation. Genex endorsed Dr. Trangle's opinion and disregarded the opinions of Mr. Covert's treating clinicians.

61. Genex's complete records and reports related to Mr. Covert are not included in his claim file.

62. Guardian blindly adopted Genex's report without any further consideration or the exercise of any discretion on its part.

63. In a letter dated June 4, 2021, Guardian denied Mr. Covert's appeal of the denial of his claim.

64. In the June 4, 2021 letter, Guardian again incorrectly concluded that Mr. Covert was capable of performing the material duties of his own occupation and that "Guardian has determined that we were not provided with any objective medical evidence which would support limitations that would preclude you from performing your major work duties as of March 30, 2020."

65. The June 4, 2021 letter from Guardian further confirmed that Mr. Covert had exhausted his appeals under the Plan and had the right to bring a civil action pursuant to Section 502 of ERISA.

66. All conditions precedent to filing suit have been completed.

## COUNT I
## DENIAL OF BENEFITS
## PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

67. Mr. Covert repeats, reaffirms, and realleges paragraphs 1 through 66 of the Complaint as if they were fully restated at length herein.

68. Mr. Covert has exhausted his administrative remedies under the Plan and, thus, all conditions precedent to the filing of this action have been performed or have occurred.

69. Mr. Covert is entitled to disability benefits under the terms of the Plan because he is disabled from his own occupation as defined by the Plan.

70. The denial of Mr. Covert's claim for benefits was contrary to the terms of the Plan, de novo wrong, and an abuse of discretion.

71. Guardian failed to provide Mr. Covert with a full and fair review of his claim in violation of Section 503 of ERISA, 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1, by *inter*

*alia*, failing to provide him with all documents relevant to his claim for benefits and by misclassifying his occupation as requiring a light level of exertion.

72. Guardian did not exercise any discretion in ultimately denying Mr. Covert's claim because it simply adopted Genex's determination of his claim.

73. Genex was not vested with any discretionary authority to construe the terms of the plan or determine eligibility for Plan benefits.

74. Under Section 502(a)(1)(B) of ERSIA, 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

75. As a result of Guardian's denial of Mr. Covert's claim for benefits, subsequently upholding that decision, and the refusal to overturn it, there exists an actual case and controversy by and between the parties hereto entitling Mr. Covert to a declaration of rights clarifying the benefits to which he is entitled under the Plan.

WHEREFORE, Mr. Covert prays the Court grant him the following relief with respect to Count I of his Complaint:

a. That the Court enter judgment in favor of Mr. Covert and against Guardian and the Plan, and award him all past due LTD benefits;

b. That the Court order Guardian and the Plan to pay Mr. Covert prejudgment interest on all benefits that have accrued prior to the date of judgment;

c. That the Court reinstate Mr. Covert's LTD benefits prospectively subject to the terms of the Plan;

  d. That the Court award Mr. Covert his reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against Defendants; and

  e. That Mr. Covert recovers any and all other relief to which he may be entitled.

**COUNT II**
**PARTICIPATION IN A FIDUCIARY BREACH**
**OR OTHER VIOLATIONS**
**AGAINST GENEX**

  76. Plaintiff repeats, reaffirms, and realleges the foregoing paragraphs 1 through 75 of the Complaint as is they were fully restated at length herein.

  77. Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of providing benefits to participants and their beneficiaries; (B) with "care, skill, prudence, and diligence;" and (C) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

  78. Guardian as the Plan's claim fiduciary had a fiduciary duty to accurately interpret the Plan in the interests of Mr. Covert and for the exclusive purpose of providing benefits and to comply with the terms of ERISA, including the obligation to provide Mr. Covert with a full and fair review of his claim in accordance with Section 503 of ERISA, 29 U.S.C. § 1133.

  79. As set forth above, Guardian breached its fiduciary duties to Mr. Covert by denying him a full and fair review of his claim, denying his claim for LTD benefits, and adopting a claim determination that served its financial interests over those of Mr. Covert, a Plan participant.

  80. Genex knowingly participated in Guardian's fiduciary breaches and violations of ERISA by aiding and abetting Guardian's violations and adjudicating Mr. Covert's claim in Guardian's favor.

81. Genex, like Guardian, ignored the opinions of Mr. Covert's treating physicians, cherry picked the medical evidence in the file, and ignored the results of Mr. Covert's FCE. Instead, it reached an outcome-driven claim determination that was calculated and designed to support a denial of Mr. Covert's claims and support the financial interests of its customer: Guardian.

82. Genex is therefore liable for knowingly participating in Guardian's breaches.

83. By virtue of the violations set forth in the foregoing paragraphs, Genex is subject to being ordered to provide Plaintiff appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited to a surcharge equivalent to the disability benefits at issue in this matter and a constructive trust over the funds it received in performing services on behalf of Guardian with respect to Mr. Covert's claim.

WHEREFORE, Mr. Covert prays the Court grant him the following relief with respect to Count II of his Complaint:

   a. That the Court enter judgment in favor of Mr. Covert and against Genex, and award him an amount equal the to the disability benefits at issue in this matter;

   b. Apply a constructive trust as to any funds Genex received from Guardian in connection with Mr. Covert's claim;

   c. Disgorge any profits earned on any funds Genex received from Guardian in connection with Mr. Covert's claim;

   d. That the Court order Genex to pay Mr. Covert prejudgment interest on all amounts awarded to him from July 2020 to the date of judgment;

   c. That the Court award Mr. Covert his reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against the Committee; and

d. That Mr. Covert recover any and all other relief to which he may be entitled.

Respectfully submitted,

/s/ Adam H. Garner
Adam Harrison Garner (320476)
Melanie J. Garner (315058)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 550
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com
melanie@garnerltd.com

*Attorneys for Plaintiff*

Dated: September 9, 2022